IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:16-CV-73-BO

| | |
|---|---|
| DONALD R. GIBBS,<br>        Plaintiff,<br><br>v.<br><br>CAPPO MANAGEMENT VII, INC.,<br>d/b/a OBX CHEVROLET BUICK,<br>TONY BEAKES, and MARC HELLMAN,<br>        Defendants. | ORDER |

This cause comes before the Court on defendant' motion to dismiss, or, in the alternative, to stay and compel arbitration. [DE 16]. The matter is fully briefed and ripe for disposition. A hearing was held before the undersigned on March 21, 2017, in Raleigh, North Carolina. For the following reasons, defendant's motion is granted and the case is dismissed.

## BACKGROUND

Plaintiff filed his complaint on October 12, 2016, alleging claims of harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against defendant Cappo Management, and claims of harassment and retaliation under 42 U.S.C. § 1981 against all defendants. [DE 1]. Plaintiff alleges that he was subjected to multiple instances of racial name calling and slurs on a near daily basis during his employment with defendant Cappo Management. *Id.* Plaintiff alleges that management was notified, did nothing to stop the harassment, and then fired him because of his complaints. *Id.*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. §§ 1-6 ("FAA"), defendants filed a motion to dismiss, requesting from this Court an order compelling arbitration on plaintiff's claims and dismissing plaintiff's

complaint. Plaintiff's application for employment with defendant contained a mandatory arbitration clause, and plaintiff also signed a separate Arbitration Agreement after beginning employment which made arbitration mandatory in lieu of suit in court. *Id.* Defendants argue, therefore, that all of the issues in a lawsuit are subject to a mandatory arbitration agreement and that arbitration of all claims in the complaint should be compelled by the Court. [DE 16].

In response, plaintiff does not dispute that he signed these agreements, but argues the arbitration agreement is not a true bargained-for agreement because he signed it more than a month after beginning work and had no choice but to sign it in order to keep his job. [DE 24]. Plaintiff also argues that the arbitration agreement should does not pertain to this suit because the agreement was between plaintiff and Victory Automotive Group, Inc. *Id.* Victory is a management company, but according to plaintiff is not in a subsidiary, parent, or closely related corporation with defendant Cappo Management. Therefore, since it is not a signatory on the arbitration agreement, plaintiff argues that Cappo Management should not benefit from the agreement between Victory and plaintiff. *Id.* In addition, plaintiff argues that defendants Tony Beakes and Marc Hellman are not parties to the agreement and so cannot be covered by the arbitration clause. *Id.* Finally, plaintiff argues that the Arbitration Agreement is unconscionable because defendants never provided plaintiff a copy of the arbitration agreement before he was required to sign, because the arbitration agreement was contained on an entirely separate page, and because there was no reference or verbal discussion of the arbitration agreement. *Id.*

## DISCUSSION

Defendants brought this motion to dismiss under Rule 12(b)(6). However, both parties agree that the motion can be resolved under the standards governing a motion to dismiss as well as under a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure. Accordingly, and because defendant's motion relies on matters outside of the pleadings, the Court will treat this motion as one for summary judgment. Fed. R. Civ. P. 12(d).

A court may grant summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The moving party bears the initial burden to show the court that there is an absence of a genuine issue concerning any material fact and that the non-moving party cannot prevail. *See Celotex*, 477 U.S. at 325. In order to survive the motion, the non-moving party must then show that there is "evidence from which a jury might return a verdict in his favor." *Anderson*, 477 U.S. at 257. The court must accept all of the non-moving party's evidence as true and must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 255.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the resolution of private disputes through arbitration. Section 2 of the FAA provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2.

Under Section 3 of the FAA,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,

3

providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Therefore, under the FAA, a lawsuit must yield to arbitration where there is (1) a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) a relationship between the transaction and interstate commerce; and (4) a failure of the parties to arbitrate the dispute. *See American Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). Whether a valid agreement to arbitrate a dispute exists is governed by state law contract principles. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). However, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989).

The first element of the four-part test is met, as evidenced by the current lawsuit. The Court also finds that the second element is met because plaintiff signed two valid agreements to arbitrate this dispute. When plaintiff applied to work for defendant Cappo Management, he submitted an application for employment, which provided the following condition of employment:

> I understand that it is a condition of my employment with this company that I agree to settle any dispute arising out of my employment through binding arbitration rather than through a lawsuit, and that by accepting employment with this company I am waiving my right to a jury trial in these matters.

[DE 17-2]. In addition, when plaintiff began working for defendant, he signed an arbitration agreement. The arbitration agreement provides "Employer and Employee . . . mutually agree that any Dispute between them (including any dispute involving an employee or agent of Employer) shall be submitted to binding arbitration." [DE 17-3 at 1]. A "Dispute" is defined

4

by the agreement as:

> any claim, dispute, difference, or controversy, whether or not related to or arising out of the employment relationship, and including any claim, dispute difference, or controversy (i) arising under any federal, state or local statute or ordinance (including claims of discrimination or harassment); (ii) based on any common-law rule or practice, including breach of contract or fraud; (iii) involving the validity or interpretation of this Agreement, or (iv) any other claim, dispute, difference, or controversy whatsoever.

*Id.* Finally, the agreement provides

> This Agreement constitutes the entire agreement between the parties respecting the method of resolving Disputes, and supersedes any other oral or written agreement. This Agreement may not be modified, waived, or revoked except by a writing signed by both Employer and Employee, which specifically refers to this Agreement.
>
> Employer and Employee have each read and understand his agreement, and understand that this agreement to binding arbitration constitutes a waiver to trial before a judge or jury.

*Id.* These agreements clearly cover the issues at dispute here as alleged by plaintiff in his complaint.

However, plaintiff disputes the validity of the arbitration agreement, contending that it is not a true bargained-for agreement because he signed it more than a month after beginning work and had no choice but to sign it in order to keep his job. Plaintiff also argues that, for similar reasons, the agreement is unconscionable and not binding on this dispute.

"In determining whether the parties executed a valid agreement to arbitrate, courts generally apply ordinary state-law principles that govern the formation of contracts." *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001). As such, this court turns to North Carolina contract law. "North Carolina has a strong public policy favoring the settlement of disputes by arbitration. Our strong public policy requires that the courts resolve any doubts

5

concerning the scope of arbitrable issues in favor of arbitration." *Johnston Cty. v. R.N. Rouse & Co.*, 414 S.E.2d 30, 32 (1992).

Plaintiff's arguments regarding the unconscionability of the agreement are unavailing. Under North Carolina law, "[a]n inquiry into unconscionability requires that a court consider all the facts and circumstances of a particular case, and if the provisions are then viewed as so one-sided that the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable." *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 369 (2008) (internal punctuation and quotation marks omitted). "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." *Id.* at 370.

"Procedural unconscionability involves 'bargaining naughtiness' in the formation of the contract and is equated with the words 'unfair surprise' . . . and with the phrase 'lack of meaningful choice.'" *Rite Color Chem. Co. v. Velvet Textile Co.*, 411 S.E.2d 645, 648 (1992) (internal punctuation and quotation marks and citation omitted). "Procedural unconscionability includes "fraud, coercion, undue influence, misrepresentation, [and] inadequate disclosure." *King v. King*, 442 S.E.2d 154, 157 (1994). Plaintiff argues that procedural unconscionability can be shown because defendants never provided a copy of the agreement before he was required to sign it, because the agreement was on a separate page, and because there was no reference to or verbal discussion of the agreement. The Court does not agree that these actions are such examples of culpable behavior to equal the type of fraud, coercion, undue influence, misrepresentation, or inadequate disclosure necessary to constitute procedural unconscionability. Moreover, the Court does not believe that under state law inadequate explanation of the terms of a contract can constitute procedural unconscionability, because North Carolina law has long recognized that "[o]ne who signs a written contract without reading it, when he can do so

6

understandingly, is bound thereby unless the failure to read is justified by some special circumstance." *Davis v. Davis*, 124 S.E.2d 130, 133 (1962). Plaintiff has justified his ignorance of the terms only by stating that "he was given numerous documents to sign and . . . does not recall reading any of these documents." [DE 24 at 2]. The Court finds that this does not constitute the type of special circumstance justifying his failure to understand the terms he assented to.

Additionally, the Court does not find substantive unconscionability to be present in these circumstances. "Substantive unconscionability, on the other hand, involves the harsh, oppressive, and one-sided terms of a contract from which a party seeks relief. Such terms are generally characterized as being unreasonably favorable to the other party to the contract." *Rite Color*, 411 S.E.2d at 648–49. These mandatory arbitration agreements were not one-sided. Each party mutually agreed to be bound to arbitration for any dispute that arose. The agreement was perfectly equivalent, and thus plaintiff cannot plausibly allege that any terms in these agreements are so one-sided, unreasonably favorable to the other party, or "so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Brenner v. Little Red Sch. House Ltd.*, 274 S.E.2d 206, 210 (1981).

Nor can plaintiff show that consideration or mutual-assent was lacking, because under North Carolina law, "[w]here each party agrees to be bound by an arbitration agreement, there is sufficient consideration to uphold the agreement." *Martin v. Vance*, 514 S.E.2d 306, 310 (1999); *Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879, 881 (1999). And, because plaintiff has demonstrated no adequate reason why he should not be bound by his signature on a written agreement, *see Davis*, 124 S.E.2d at 133, the Court finds that he assented to the agreements. Therefore, under North Carolina law, plaintiff's documented acknowledgement of the agreement

and his continuation of employment constitutes acceptance of and consideration for the agreement. *See Ingram-Allen v. Iveys*, 2004 WL 1462024, at *2 (M.D.N.C. Feb. 26, 2004) (citing cases). Thus, plaintiff's arguments as to the invalidity of the arbitration agreement or his application for employment are without merit.

Plaintiff next argues that the arbitration agreements, even if valid, do not cover this dispute because the agreements would only be between plaintiff and Victory Automotive Group—the management company listed on the top of each agreement—and therefore would not cover the individual defendants. However, each arbitration agreement clearly refers to the parties involved as the "Employer and Employee," and plaintiff does not dispute that defendant Cappo Management was his employer. The agreements also expressly cover "any dispute arising out of [plaintiff's] employment," and plaintiff also does not dispute that the incidents in his complaint arose out of his employment with defendant Cappo Management. "[T]he determination of what disputes are arbitrable is focused on the intent of the parties." *Carson v Giant Food, Inc.*, 175 F.3d at 328–29 (4th Cir. 1999) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960)). "We have insisted that, in general, the parties—not the courts—control which disputes will be arbitrated." *Carson*, at 329. As discussed above, the arbitration agreements are valid contracts, and the express language of the agreements clearly manifests the intent of the parties to cover these defendants and these claims alleged by plaintiff. Therefore, the Court finds that the arbitration agreements are valid and cover the disputes alleged by plaintiff.

Turning now to the third element of the test for whether arbitration should be compelled, the Court finds that there is an adequate nexus with interstate commerce. Employment contracts have been held to be within the scope of the FAA because of the inclusion in § 2 of contracts

8

"evidencing a transaction involving commerce." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001). Moreover, the arbitration agreement expressly states that it "relates to and arises out of a matter affecting and influencing interstate commerce." [DE 17-3 at 2].

Turning to the last element, plaintiff has neglected to arbitrate the dispute by filing this lawsuit, thus satisfying the fourth element of the test. Accordingly, under the FAA, the arbitration agreement and the mandatory arbitration clause in plaintiff's application for employment are enforceable and compel arbitration in this matter.

Finally, the Court finds that dismissal, and not a stay, is the proper remedy in this case because all of the issues presented in the lawsuit are arbitrable and covered by the arbitration agreements. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss in favor of arbitration [DE 16] is GRANTED. The clerk is DIRECTED to close the case.

SO ORDERED, this 28 day of April, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9